Case No. 14-7210, James A. Thompson, Jr. Appellant v. District of Columbia et al. Mr. Salop for the appellant, Ms. Wilson for the appellees. Good morning. Good morning, Honors. Have you been litigating this case since the beginning? I have not been lead counsel in this case since the beginning. My law partner, if blessed memory was. You don't look old enough. Thank you so much, Your Honor. I have been involved in this case from the very beginning, not long after, just a few years out of law school, and here we are 19 years later. May it please the court, my name is Mike Asaba, I represent fired. His employment was terminated in a way designed to hide what was really happening. The termination was not a rogue act by some low-level employee. It was done literally by the hands of the man who ran the lottery, the most senior official there. And it wasn't a rare aberration. It wasn't like what we saw at the lottery was good personnel practices with proper protections in place for employees. At about the exact same time as Mr. Thompson's termination, a jury was reaching the conclusion in the Fox case that Mr. Fox had been fired because he had called the police about a security violation which embarrassed a high-level lottery official and caused the delay of one of that official's friend's promotions. It was endemic at the lottery. The lottery board was aware of this. In September of 96, almost immediately after the constructive termination, the lottery board wrote a letter to Mr. King, the executive here. And in that letter, it identified personnel violations among other violations. The board knew, but it took no action. Is your answer to their Manel argument, one, procedurally you can't raise it at this juncture because of the agreement against summary judgment? Two, you can raise it to satisfy Manel because Mr. King was the policymaker? Or is it three, the board ratified Mr. King's policymaker? All of the above, Your Honor. I should point out that the agreement between the District of Columbia and Mr. Thompson that they would not seek disposition of the case was... Manel, the agreement said, was strikingly specific about not filing under Rule 56B or whatever. It wasn't you won't file dispositive motions under Federal Rule 56B. Right, but I don't know that they can get to their Manel argument without it being a 56D argument. I wanted to ask you, when did they first raise Manel? Very recently, Your Honor. I saw it in their second motion for judgment on the pleadings, which I think attached other documents to it, so it was actually a summary judgment motion. But I don't have their answer. That was in the... Judge, was that in the 2000s? Or was that the 1998 motion? The second one was 2003, March 2003. They raised Manel and attached documents outside the pleadings that called it a judgment on the pleadings. But their first motion for judgment on the pleadings in January 2003, we don't have a copy of. It sounds like that raised Manel, but I don't know if they attached things outside, whether that was some rows of summary judgment or whether that was a legitimate judgment on the pleadings. And I don't have their answer, so I don't know if it... Unfortunately, I don't have that answer either. We had sent those files off-site. It's been a long time. I wish I had the answer to that. I did look at some material on our server and that we had in the office, and there were no Manel arguments raised early in the case, as best I could tell, except that we do have indication that some of the lawyers for the District of Columbia, Wendell Hall and Mark Back, Mark Back who's recently been proposed to serve on the Superior Court bench, these are skilled lawyers. These are not lawyers without experience and knowledge in the field. And if there were a viable Manel claim, they would have addressed it before reaching the agreement that they wouldn't seek summary judgment. So from our perspective, Manel has never been the locus of dispute in this case. And can you explain to me, he originally filed a CMPA appeal from the RIF action. Can you explain to me why that was abandoned and why... Could that appeal have given him the relief he wanted to make? Could he have gotten from that appeal reinstatement? No, Judge Millett, it could not. Preliminarily, there certainly is case law that suggests that a statute of limitations in terms of the timeliness of bringing something to the Office of Employee Appeals could be ignored, or the lack of timeliness rather, when it's the government's failure to advise the employee of his or her right to go to OEA. In this case, however, I can state with certainty because I was on these phone calls that the Administrative Law Judge, Judge Lim, was absolutely unequivocal that this case was solely about the reduction in force. It was not about anything that had happened earlier. And by earlier, I'm not talking about the pre-termination stuff. I'm talking about the determination and the constructive discharge. That first OEA appeal was filed on October 7th, long after the 15 days that were then permitted under the codes and the rules for filing an The RIF itself was the end of September, so it was not outside of the time for the RIF. And so what I'm trying to ask is, I understand you have other arguments about the transfer into the position to begin with, but what I'm just trying to figure out is, and maybe there were other things one could have, and you have been litigated over, but could have that CMPA adjudication gone forward? Could they have made the arguments there that I should not have been subject to the RIF because I should not have been in the spot, and essentially make the exact same arguments that have been made here? And could that process order reinstatement? Your Honor, you put me in a difficult position. My opinion is that it should have. The OEA view was that it would not and could not. That the question before the OEA was whether a RIF had been done, whether it was a bona fide RIF, which we have from the beginning acknowledged to be the case, and whether he lost his job through that RIF. Now we said, but the only reason he was there was because of this misconduct. That was of no interest to the OEA. They had a very narrow view of the scope of their authority, and we can say, they took as a given the bona fides of the transfer. Yes. Well, strike that. They said that transfer happened before the RIF. We are only looking at the RIF. Was he in a position that was eliminated? Yes, he was. That's it. And that was the scope of the issue on appeal. And what I said in the record, that's all that they were looking at? You don't have it right now, you can do it on rebuttal. Your Honor, at 326 in the appendix, there's only the most passing reference that the agency had filed a motion to dismiss for lack of jurisdiction, alleging that Mr. Thompson had not filed an internal grievance, a grievance in-house, and therefore there was no action over which the OEA could adjudicate. And so that's really very vague, and it doesn't go very directly to the issue. The long and the short of it is that I don't believe that there is anything in the record that specifically states that OEA was cabining its review. But that was the case. And we know, by the way, of course, the OEA appeal, if we want to take a formal view of this, we know that the OEA appeal was filed timely as it relates to the RIF, which was, of course, when Mr. Thompson lost his position. So it was timely as to that, but it was not timely as to the constructive discharge. And it was, of course, the constructive discharge. It wouldn't be timely if they hadn't given you proper notice. I'm sorry? It would be timely if they hadn't given you proper notice. There would be tolling, I assume, of the time limited, if they had hid the information from you. I believe that all of the case law that suggests or that indicates that there is tolling is case law that comes long after 1996 and 1997. I don't think that that was really anything that anybody was particularly aware of at that time. And then can you just explain to me, just to get back to the Monell question, just real quickly, the argument that he was the final policymaker, or I'll make it shorter, can one tell from just looking at the complaint and answer whether he was the final policymaker? No. No, one cannot, because to know whether he's the final policymaker from the complaint, I don't have the complaint memorized, but I'll assume that we said that Frederick King took this action, that Frederick King was the executive director. And conceivably, when we look at Triplett in particular, we can see that, and we look at the statutory scheme where the executive director is the chief executive officer of the lottery board, and we compare the circumstances in Triplett in terms of the statutory authorities, the role of the chief executive officer, the role of the agency in promulgating rules, and the chief executive officer's role in that regard. It is, perhaps there's a way that one could argue on the complaint and answer that Mr. King was a final agency, a final policymaker. As I read the statute, if the complaint alleges that King is the executive director, and then the statute assigns policymaking authority in this area to the executive director, then you'd be home on Menil. And so then the question is, what does the statute say? Well, the statute, and of great significance here, the statute says that the executive director, not the board itself, the executive director, is the personnel authority for the lottery, not, by the way, for him or herself and not for the deputy director, but for everybody else at the lottery, including, of course, Mr. Thompson. So in that regard, if the personnel authority is the final policymaker as it relates to personnel matters, then that would get us there. The problem is that we always have to struggle with this, with drawing that distinction between discretionary actions by somebody, which, of course, are not final policymaking authority, and the ability to set the policy. And unfortunately, D.C. law does a very poor job of defining the role of the personnel authority. The job is to implement. And so one might. As opposed to formulate. I'm sorry? As opposed to formulate. Right, so one might draw that distinction, implement versus formulate. So, yeah, it would be nice if we could just look and see it's very clean, but rarely is that the case in Monell arguments. So if you had to litigate the Monell issue, what kind of evidence would you put into the record? We would look at the actual role of the executive director in making employment decisions. For years and time after time, the executive director acted independently in setting personnel policy at the lottery. And that would be our primary role. And, of course, that's following on the Ascalia case in which, you know, the formal words of the statute are not dispositive. My colleague from the District of Columbia says, look at everything that it says in the statute. And I say, yeah, and look at what actually happened with knowledge and without interference by the board, which was largely inactive. I thought in the earlier go round of this, what we call Thompson one, that the court had said that King had absolute discretion to identify positions for abolishment. That is correct, Judge Griffin. Absolutely right. His testimony, unrebutted, was that he decided who to hire, who to fire, without supervision. That he decided who went on the risk list. It just seemed to me from your earlier answer, you were turning the Monell question to a factual determination for us. I don't think you want to do that, do you? Well, I'd rather not, Your Honor, to be sure. You'll do both, right? I'm sorry? You'll do law and fact. I'll take whatever I can get. And that's why I say it's a little uncomfortable, because I think one can make the argument, as we have, that just on the paper, just in terms of the law, and perhaps maybe if we go beyond that and say the facts alleged in the complaint, on a 12B6 motion, we would prevail. But on a summary judgment motion, I think there would have to be some looking at the facts. The facts are that Mr. King testified without rebuttal that he had primary – strike that – he had sole authority to formulate the risk list, to formulate how the risk would be done. So if you prevail, then you think this ought to go back to the district court to make that sort of determination? No, Judge. I believe that the facts that are before this court are adequate for this court to conclude that, in fact, Mr. King was the final policymaker. I think it's important to note that there is no contradictory evidence. All the evidence in this case shows that Mr. King acted independently. He acted with authority and not just effectuating policies that someone else put in place. Just to clear up, our prior decision was talking about his authority over the RIF. I take it it's a different question whether he had authority about transferring people into positions internally. I mean, that's really what you would need to show here. You're probably right, Your Honor. It's hard to tease these apart, of course, right? I'm just trying to figure out how much we've already decided. Right. And so, first, I don't think that there is any contradictory evidence over whether anybody had any role in hire and fire and transfer decisions other than Mr. King. That's the actual decisions and even the policy underlying it. Including the fact that Mr. King is the personnel authority for the agency. So I think that that puts that issue to bed. So if we're focused on the transfer into or, as this court already held, the constructive termination that happened in August, right? In that regard, Mr. King was the personnel authority. He was the final policymaker. If we tie that to the RIF, we have the same thing where he was the sole actor and the sole decision maker. And so relying on the Ascalia proposition that whatever may appear in statute is helpful but not dispositive, it's clear that Mr. King was the final policymaker as it relates to the RIF. But just to be clear, but your first order, this is all fallback. Your first order of position is that we shouldn't be getting into this enterprise at all because of the agreement. Judge, if… I know you'd like to say it depends on how we come out. Am I that transparent? Yes. To be sure, if the court's going to determine as we want, then you should decide the issue. So your view is that the agreement forecloses our ability to get into this because… Yes, Judge. That's absolutely right. And if… And then what would happen if we were to go back down to the district court? Well, if this court believes that the record is not adequate to actually reach the conclusion, and frankly, as I've said, I think the record is very strong in this regard. This record is more than adequate for this court to conclude that Mr. King was the final policymaker. But suppose what we say, we don't get into that because there's an agreement. Right. And that agreement extends to this context. I mean, the district draws a distinction between Rule 56 proceeding before the district court and proceedings before us. But suppose that we just say, well, the spirit of the agreement or the letter of the agreement, according to your argument, would preclude the ability for us to get into this issue now anyway because it's the functional equivalent of asking for a Rule 56 determination in the district's favor. So we won't do that. Then it goes back down. The case goes back down. Then this issue remains open. It does judge, although I don't think that abiding by the agreement forecloses this court from reaching the affirmative conclusion that Mr. King was the final policymaker. Right. So the issue, you know, I don't think that that's outside of the realm of the power of the court. And, frankly, I think that the reason Judge Leon issued the decision he did was because he recognized that it could not be presented by the defendant. If the case was to be dismissed, he had to act so as far as possible. Right. What I'm trying to figure out is that normally Manel arguments can be waived, and they didn't raise it before the settlement. I can't see any sign that they raised it before the settlement and stipulation. And if at that point they tied their hands so they couldn't raise it going forward, would that be constructive waiver of the Manel argument, or were they just allowed to save it, to litigate it at trial? I can't quite figure out what to do with this. How the stipulation works is meant to work in this regard. Our view, as I hearkened to earlier, our view was that they knew of the prospect of Manel. They didn't. They should have, right? I'm sorry? They should have, right? Well, one would hope, indeed. And as I said, the lawyers who were handling the case then, as now, were excellent lawyers, and they were aware of this, and yet they didn't see it as a viable claim. So if we go back to the Court of Appeals to be, I beg your pardon, bite my tongue. I hope never to be before you again on this case. But if we were to go back to the trial court, then the arguments we would make are that there is no question as a matter of fact or law regarding whether Mr. King is the final policymaker, and indeed that they have waived that argument by foreclosing any kind of motion that would have addressed it, even though they could have much earlier. Would you have the same waiver argument with respect to the ground on which the district court did resolve the case, Suez Montaigne? I mean, the decision by Judge Leon is so problematic, I don't know. I haven't even begun to think about whether there's any sort of waiver argument by the district. In part, frankly, Your Honor, I don't know. I hope that my colleague will defend that decision, because that's her role, and I live in the district, and I want them to do their jobs. But I don't know that the government truly believes that Judge Leon's decision was a sound decision. You know, the judge asked for briefing as – I guess I should step back and say the judge called us in for a status conference after one of my many motions to try to get the case restarted. The case was quiescent for eight years or something. And we met in a conference room, unfortunately not on the record, and the judge indicated that there would have to be – I guess we have to schedule a trial, he said. And then suddenly he sort of interjected, but wait, are damages permitted in a case like this? And we said, you mean a due process case, Your Honor? And he said, yeah, you know. And so he asked for briefing on damages, on what damages were permissible. And so we explained, and it's in the appendix, what we believe the appropriate measure of damages was in this case. Yeah, I guess I may be asking a question that – to which there's a very easy answer. Because I don't mean to get into the merits of whether it was proper – whether the decision on how to allocate the burden was correct. I don't mean to get into that. I guess what I'm asking is if the case goes back down, then the parties have to deal with what is still open for resolution when it goes back down. And I think Monell is one possibility and one answer to that. If we don't resolve Monell and we say because of the agreement, we're not going to get into that, it goes back down, then one possibility is, well, Monell is actually not open because it's baked into the agreement. And so that's foreclosed. And I take it then the argument would be that there can't be a sua sponte determination as to Monell either because there had been a waiver. Yes, Judge. And I guess my question is, does that same logic also apply to the sua sponte determination that was made? I don't think so, Your Honor, because the issue that Judge Leon addressed is whether the plaintiff or the defendant has the burden of proof, right? Right. And, of course, that wasn't the question that the judge had asked, so that's not the question that we answered in the district court. And I don't think there's much mystery as to what the proper answer should be. But either way, I don't think that that's an issue that somehow would have come up. Whether Mr. Thompson is entitled to damages is not a hard question. It's not like the ‑‑ I don't think that there would have been a motion for them to have filed. I suppose if the court wants me to make such a motion, I could do so with some ease. But I don't know that that's something that we would put a lot of eggs in our basket for. Okay, that's fine. I'm just curious, in terms of damages, was there any evidence about damages? Evidence about damages? Any evidence about damages? Is there anything in the record? Yes. In fact finding by the district court on damages? Fact finding by the district court, no. The undisputed evidence relates to calculation of lost wages, which I think exceeds a million dollars, and emotional distress, and there's voluminous evidence from Mr. Thompson's mental health providers. But the district court never passed on any of that. Correct, Your Honor. Thank you. Good morning, and if it pleases the court, I'm Mary Wilson, representing the District of Columbia. There's no point to remand this case for trial because any trial would be futile because the district would be entitled to judgment as a matter of law at trial under Monell. The plaintiff would not be able to establish municipal liability. When did you first raise Monell in this case? I also don't have the earlier record, but we definitely raised it immediately upon remand. In 2010, we raised it in opposition to the plaintiff's motion for summary judgment. 2010? I'm sorry, 2011, D.C.'s own summary judgment motion. But I don't think, Your Honor, that there's any— Was it 13 years after the case started? First of all, the plaintiff has never argued that we have waived or forfeited our Monell argument by not immediately raising it if it wasn't immediately raised. Not immediately? Did you say not immediately raising it? Yes, and the stipulation— Do you have a copy of your answer? Did you raise it in the answer? We don't have—it's in storage. But the stipulation that was signed by both government lawyers and plaintiff's lawyers said the parties hereby reserve all rights and defenses as to the remaining counts in the complaint. And in all the time we raised the Monell issue in— But you also said—you didn't just say that you won't file for summary judgment. It also said you won't litigate the motion for summary judgment. And it sounds to me, to the extent it was raised, you kept raising these— I've never seen so many motions for judgment on the pleadings in a single case. I thought people did it once. And then a motion in limine to raise legal— The district was— I mean, you keep doing that, which is litigating summary judgment by another name, isn't it? The district was—it is in an awkward position here. Because it has legal defenses, it could raise a trial that make going to trial futile. And that's what you do when you say I'm not going to do—I'm sorry. When I'm not going to go to summary judgment. But we reserve the rights and defenses. Well, then at the end of the trial, you can make a motion on that. But you have to—that's what an agreement that I'm not going to litigate summary judgment means. Yes. But the stipulation was not binding on the district court. It's not binding in this court. The district court has the authority to sua sponte grant summary judgment. Only in exceptional circumstances, I think, as our president. There's nothing exceptional about holding you to your agreement. The district court's entitled to grant judgment sua sponte when there's no prejudice to the plaintiff and the issue has been thoroughly briefed. And it was thoroughly briefed here in the cross motions for summary judgment. But there's plenty of prejudice to the plaintiff because you're breaching your stipulation. And there's no—what is the exceptional circumstance that would allow you to— Well, the exceptional circumstance is that it would be a waste of the court's time and Mr. Thompson's time himself to allow him to go to trial when— I think he's not concerned about wasting his time litigating this case. Well, I think the district court was concerned about taking this case to trial when the district has legal defenses, clear legal defenses under Supreme Court case law. Well, if they're so clear, you would have raised it at some point in 13 years, wouldn't you? Well, this court's second appeal really focused the case on the fact that he was entitled to process under his version of the facts at the time of the reassignment. And at that point, the district immediately raised Monell on remand. And it may have raised it before that. I'm not sure yet. But immediately raised it on remand from the— And Mr. Thompson, rather than say, yes, let's have— Then would you have raised it in your summary judgment motion? At least by then, yes. In a summary judgment motion. Summary judgment motion. Which is exactly—I mean, you can't— But a summary judgment motion is a summary judgment motion. I think it doesn't make sense for the court to say Mr. Thompson can force the district court to take this case to trial when the district court has a crowded docket and has determined that the district is entitled to judgment as a matter of law. No, what they could say is you had your chance. You forewent summary judgment. You'd never mentioned Monell before. You can't show me that you ever mentioned it before. And the only place—if you haven't raised that by summary judgment, the normal rule is that it's waived. And so that must have been a waiver. I don't think Monell is an affirmative defense. Monell establishes how the plaintiff proves his case, how the plaintiff proves municipal liability. And if the plaintiff can't prove municipal liability under Monell, we're entitled to raise that at trial. You have not established municipal liability. Okay, then raise it at trial. We could raise it at trial, Your Honor. I just think it's an injustice to force this case to trial when the district has, you know, three different legal defenses as a matter of law that is—I mean, under Propotnick and Singletary— Are any of those defenses things that are not waivable? Well, again, the plaintiff hasn't waived any waiver argument. The plaintiff has never argued that we raised Monell too late. The plaintiff has never raised that argument. Well, because his opposition is, we should be at trial. We should be fighting this stuff at trial. Stop trying to dismiss this case post-discovery, pre-trial, based on documents outside the record, which, in my mind, is called summary judgment. He certainly preserved that argument. I think, considering that the court—this court and the trial court— that the stipulation does not bind the courts and that the stipulation says the parties reserved all rights and defenses, that it just—I think the district court was entitled to act to respond to dismiss the case, and this court has the discretion to reach these issues rather than go through a sham trial or a useless trial, a futile trial, when it's clear that the district— Well, because the district court didn't choose to address Monell either. So now we would have to be the ones who would choose to address it. Well, the district court did choose to address one of the district's legal defenses. Oh, I understand, but it did not choose to address Monell. Yes, that's correct. It did not. Either, and in fact, it denied your summary judgment motion, raising Monell on the ground that you don't get to do that. Yes. Yes, I think that's right. Well, or it might have been a minute order, but yes. Yeah. But the ground was that you don't get to do it because of your agreement. Yes, but then the district court found itself in this conundrum that, in its crowded docket, it asked the parties to brief the legal issues that would be left for trial, and the district also did the motion to eliminate. So, considering that the stipulation is not binding on the court, that the plaintiff agreed that we were preserving all defenses, the plaintiff has never raised waiver or forfeiture of Monell, forced the district court to take this case to trial, and then rule on Monell, just doesn't make sense. If courts can sui es ponte, raise Monell, can they sui es ponte find waiver? How much sui es ponte power do courts have? I don't know of any cases off the top of my head where the court can sui es ponte find waiver. Can I clarify just one thing on the same question I asked them? Do you think the Monell decision can be made determined just on the basis of the complaint and your answer, if we can ever get it? Or would you need, as they say they may need, to have some outside information? Your summary judgment motion made Monell but attached a bunch of other stuff to it like summary judgment motions commonly do. I'm trying to figure out whether you could actually have a legitimate judgment on the pleadings on Monell in this case. Well, the court's first appeal was based on accepting the facts in the complaint. There was no concession on our part of those facts. I'm not sure. I think, yes, that the court could rule based on a judgment on the pleadings that there were no allegations of any decision made by a final policymaker. How long would it take? With the caveat that we didn't waive it if we didn't raise it in the answer because it's not in the affirmative. How long would it take y'all to get us a copy of your answer? I think the easiest way would be for me to ask the district court to dig it up, which I'm happy to do. That might be easier than us getting it from Suitland. I think the district court stuff is boxed up, too. You can try it at home. I would like a copy of it if somebody can get me a copy of the answer. I will work on digging it up. That's what a judgment on the pleadings is about, is the complaint and the answer. We have all these motions and we don't have half of the operative documents. I would be happy to search for it with the understanding that we strongly think that we preserved all defenses, that Monell is not an affirmative defense. In Proprotnick itself and in Singletary, these issues were raised at trial and post-trial, and the courts decided the issue was post-trial. So it was in no way waived. The plaintiff hasn't claimed it was waived. And so we would urge the court to affirm, because it's plain from the record that the plaintiff cannot establish municipal liability, that this case is indistinguishable from Singletary and Proprotnick. You had another argument about reclassification. Did you not? That this was reclassification, not transfer? Well, this court's first appeal... It was just a correction, I guess, is what you called it. The court's decision in the first appeal makes clear that the district had raised two defenses. One, that the riff was not personal to him or he had not been transferred as a ruse. And two, that the court says the district needed to end his disruptive behavior. So I think it's clear that early on we had at least raised those two factual defenses. I'm talking about right now. You've made alternative arguments for affirming on appeal. I thought one of them was... Maybe I'm getting confused. I thought there was this reclassification argument. Is that not right? That this position was just reclassified? Well, that's one of our factual defenses, that he says he was transferred to a new position. Right. And he moved for summary judgment on that. Well, he moved for summary judgment on that. And that's what I'm asking you. What evidence is there in the record that you could answer his summary judgment motion on that issue with that would create a genuine issue of disputed material fact that it was a reclassification? And I'm asking that both as to evidence that it was reclassification and two, that whatever you labeled it, reclassification, transfer or not, is material given the constructive discharge determination. I think we have not raised this issue as a grounds for affirmance on appeal. I think it's a factual dispute. I think the face of the personnel action form itself says reclassified. I think in Mr. King's deposition that's in the appendix, he says something about OHR reclassifying it, and there's evidence that Mr. Thompson himself referred to it as a clarification of his classification. But I think we have a factual dispute. I'm asking you why that labeling would be a material question of disputed fact for purposes of summary judgment, because whatever it's labeled, whether you call it a transfer or reclassification, it was a constructive discharge under our prior decision, was it not? So why is that a material? Accepting his version of the facts on the motion for judgment on the pleadings, it was constructive. But we also said his job duties didn't change, the function of his job didn't change. We didn't have time to change. He was out of a job within a couple of weeks. Well, our job description didn't change. Our position was that it just reclassified him in the right category. Is there a dispute in the record that, in fact, his prior position continued after the RIF, and that, in fact, someone else was hired to fill it? That's their argument. I just don't know if you have a dispute with those facts. I'm not sure about that. But we do have the alternative ground for affirmance that Mr. Thompson had an opportunity for a due process hearing at OEA and withdrew and abandoned any opportunity for that hearing. And it is clear that OEA could address his claim that he was improperly transferred and then RIF'd, and that the transfer was a ruse. And, in fact, he raised that. But in our prior decision, this is the second prior decision, at the very end, we said, we had to go forward with this case on termination. He was a career service employee transferred into a doomed position, and we end that by saying, and the district does not contend it afforded him sufficient process for that transfer into the doomed position. So how can we now? Well, I wish we had at that point. But again, the plaintiff has never claimed waiver. When we raised this issue below, he never came forward and said, you had an opportunity to raise that in the first appeal and have waived that. He said, rather, well, based on this stipulation, you can't raise that until trial. The plaintiff has never claimed that we waived that by not raising it. Did you give him notice? I think an elementary component. He didn't get notice, but he requested a hearing before OEA, so any failure to get notice is harmless. In his OEA complaint, he says, the government misled him. He was illegally transferred and singled out. He was unlawfully removed and then subject to the subsequent irregular ref, and due process required that he be heard prior to the final separation. So clearly, he raised the claim at OEA. I guess I thought our prior precedent had held he had to have notice and an opportunity for process before the transfer. I'm pretty sure that's what we had held. Yes, yes. So this requests the argument that he could have had process, I guess, before the ref termination is no, does not, he would have had no chance for process before the transfer. So I don't know how that's held to account for affirmance. But the process available at OEA, the process that he availed himself to OEA, could have made him whole. He asked that he be returned to the original position and that he had been transferred without due process. And if he had had the hearing at OEA, OEA had full of, I mean, if the court said to transfer a matter to a termination, OEA has jurisdiction to review terminations, and he could have said this was an illegal termination and he asked for reinstatement to that original position. If OEA had given him what he asked for, he would be whole and he would not have been deprived of property without due process, or at least he would have had due process. I'm sorry, what evidence do you have in the record? So they say that was never going to work because OEA was only going to say, were you in a rift position and was that position rift? And so for affirmance, as an alternative ground here, what evidence in the record do you have that OEA could have made a decision, that there was any sort of substantive decision before it that would have allowed them to give him, maybe they could have ordered him reinstated, but the legal issues it was decided were not the legal issues he's contesting? Well, I don't have independent knowledge about these telephone calls with the OEA ALJ. But if OEA ruled, no, we're not going to look at anything but the rift itself, plaintiff could have appealed that to Superior Court and the Court of Appeals, that would have been part of his process. OEA has jurisdiction to review terminations. This court ruled that accepting his facts, he was terminated at the time of the transfer and explained that to OEA, and if they reject that, take it to the Court of Appeals. He abandoned his opportunity to pursue that argument. He was untimely on that argument, he says. Well, I think as the court said, if he didn't get final notice of the transfer and his right to appeal to OEA, then his time then started running. Was there authority for that at the time? Proposition? I don't know when that happened. Just to be clear on OEA, so when you say reinstatement, we're talking reinstatement to the position from which he was transferred, not reinstatement to the position from which he was terminated. That's what he asked for in his OEA complaint, to be reinstated to the position before the rift position. And your view is that there, in fact, was authority to do that, that OEA had the ability to do that? Yes. OEA has jurisdiction over terminations, can reinstate people that are illegally terminated. I thought your position was the terminated position and his prior position were one and the same, so that's the whole classification argument, so there's nothing to reinstate him to. Accepting his facts. Accepting his facts, as the court did in its decision, saying accepting his facts, that the transfer amounted to a termination. If you accept that premise, OEA... I thought it was your facts, it was your allegation, that it was just reclassification of these positions were one and the same. His facts are that they are two different ones. Yours is that they are one and the same, so I'm trying to figure out what OEA would have, if you're right, what OEA would have put him back into. Well, if we're right, he was not deprived of any property and doesn't have a right to be... I mean, if we're right, then he wasn't terminated. If we're right, then he wasn't terminated. I'm just going to this on whether or not there's two positions or one. The process only works if there's two positions. Right. And so, sometimes we're taking their facts and sometimes we're taking yours. Right. Accepting the plaintiff's position that when he was transferred to the doomed position that that amounted to a termination, accepting those facts, OEA has jurisdiction over terminations and authority to reinstate him to the original position. Under our facts, that he wasn't transferred, his job title was clarified, so that was... Under our facts, it wasn't a termination. Right. So, under your facts, there was, in fact, nothing OEA could have done because he just would have been reinstated into our position... Right, but OEA could decide whether it was a termination. So, for either reason, I urge the court not to burden the district court with taking this trial to taste a trial unnecessarily and ask the court to affirm. Thank you. Thank you very much. Counsel, you have two minutes. Thank you, Your Honor. Mr Thompson was entitled to process for his constructive discharge. That is what this court held in Judge Brown's decision and there has never been an assertion before now that the District of Columbia extended process to Mr Thompson. He was entitled to process for the constructive discharge, not for the RIF. We're not arguing about the RIF. It was a legitimate RIF. It was the constructive discharge. That's where the wrong was done. The wrong was not done in the RIF. The wrong was done before the RIF when Mr Thompson was moved from a position that remained after the RIF to a position that the day before had been slated for elimination. What is your answer to their argument that you waived the waiver argument from Monell? I'm not sure that there is any waiver argument. I also don't know that the Monell argument has really had much of a hearing before the district court. As we explained in our brief, it's difficult for us to respond to this issue before the Court of Appeals when it has not really been explored by the district court. There's no district court decision on Monell. It's not explored by the district court. I'm sorry? Do you want to go back for more exploration? No, Judge, I do not. You keep saying that. I do not think it means what you think it means. The government's in an impossible position if they want to try to argue that Mr Thompson had adequate due process. The government hid his termination behind the RIF. Clearly, they did not provide notice to him. Was it irrelevant because hypothetically, theoretically, maybe OEA might have provided relief? Of course, that brings us to the gravamen of the appeal. Mount healthy. The government has the burden to prove that the outcome would have been different. Not that hypothetically, theoretically, possibly, maybe, OEA might have decided, okay, we'll waive the lack of timeliness, or that the superior court would have reversed the OEA, or that the D.C. Court of Appeals would have reversed the superior court. They have to prove that the outcome would have been the same, and they cannot meet that burden. Mr. McClure, I thought you had repeatedly protested in district court every time they tried to raise Monell that they're not allowed to do it. We did. Your Honors, I want to be clear as to what we're looking for. So if I can just give you 30 more seconds. Thank you, because that's all I need. Obviously, we ask that this court reverse the dismissal. We also ask that this court find that Mr. Thompson has in fact proved a violation of his due process rights, and in that regard, that is merely reiterating what this court has already held. We ask this court to find as well that Mr. Thompson has proved the quantum of his lost wages damages. Evidence which Mr. Thompson has presented never with any substantive refutation. We ask that this court find that Mr. Thompson has proved his entitlement to having his pension recomputed by the Office of Management and Budget. We ask that this court remand the matter to the district court for determination of emotional distress damages and attorney's fees. And finally, we ask that this case be reassigned when it's remanded. Thank you, Your Honors. Thank you very much. The case is submitted.
judges: Griffith, Srinivasan, Millett